F I L E D
CLERK OF COURT

2025 MAY 14 PM 3: 30

SUPERIOR COURT
OF GUAM

## IN THE SUPERIOR COURT OF GUAM

| | | |
|---|---|---|
| PEOPLE OF GUAM, | ) | CRIMINAL CASE NO. **CF0662-21** |
| | ) | GPD REPORT NO. 21-32393 |
| | ) | |
| vs. | ) | |
| | ) | DECISION AND ORDER |
| | ) | RE. DEFENDANT'S MOTION TO |
| **CORNELIUS DION LYLE,** | ) | REDUCE FAMILY VIOLENCE |
| DOB: 06/14/1967 | ) | CHARGE TO A MISDEMEANOR |
| | ) | |
| Defendant. | ) | |
| | ) | |

### INTRODUCTION

This matter came before the Honorable Maria T. Cenzon upon Defendant Cornelius Dion Lyle's ("Defendant" or "Defendant Lyle") Motion to Reduce Family Violence Charge to Misdemeanor (the "Motion"). Representing the Defendant is Attorney Samuel S. Teker. Representing the People of Guam ("the People") is Assistant Attorney General Valerie A. Nuesa. The Court took the Motion under advisement pursuant to CR 1.1(g)(4)(B) and CVR 7.1(e)(6)(E) of the LOCAL RULES OF THE SUPERIOR COURT OF GUAM on February 13, 2025.

After having reviewed the pleading, the record on file in this case and the applicable law, the Court issues the following Decision and Order DENYING Defendant's Motion.

### PROCEDURAL AND FACTUAL BACKGROUND

**A. The Indictment and the Allegations contained therein.**

On January 13, 2022, a grand jury returned an Indictment against Defendant Lyle for the following offenses: the First Charge of Aggravated Assault (As a Third Degree Felony), the

Second Charge of Family Violence (As a Third Degree Felony), and the Third Charge of Family Violence (As a Misdemeanor). The Declaration of probable cause attached to the Magistrate's Complaint describes the allegations as follows:

On or about December 26, 2021 at around **3:**15 PM, officers with the Guam Police Department responded to a disturbance at Ocean View Drive in Nimitz Hill. Upon arrival officers spoke with [Defendant Lyle], Preeyanuch Jithamul ("Victim") and N.R. (9 years old) (Witness). The Victim reported that the Defendant had been drinking and a little later the Victim and N.R. were preparing lunch by the front door while the Defendant was sleeping next to them. The Victim had been between her daughter and the Defendant with him on her left, when he kept pinching her left thigh. She told him to stop when the Defendant got up, timed around and slapped her on the face. The Victim fell and spilled their food, the Victim pushed the Defendant away and took her daughter inside.

The Defendant followed them and pushed her against the wall near the door. The Defendant kept poking her face and choking her wide his left hand. The Victim slapped his chest to let her go but he chocked [sic] her for about a minute. While she was being choked, N.R. yelled at the Defendant to stop. After the Defendant released her she grabbed her cold coffee and splashed him with it, before running inside with him following. They continued to argue and struggle before separating. Then while smoking inside the Defendant confronted her and pushed her against a couch causing the cigarette to fall. The defendant picked up the cigarette, pinned the Victim and but her face. The Defendants daughter Kianna Lyle (Witness 2) then came out of her room and saw the Victim throwing a phone, and the daughter called from help.

N.R. reported that the Defendant had pinched her mother's thigh, that her mother told him to stop, that the Defendant slapped her on the face and he grabbed the Victim and choked her.

Officers spoke with the Defendant, also noting that he had a strong smell of an intoxicating beverage emitting from his mouth and had blood shot watery eyes. The Defendant's shirt appeared wet and the neck portion appeared to have been pulled. When asked if he was injured, he stated no. The Defendant reported that he had been sitting when the Victim came and yelled at him and that he grabbed her by the shoulder to prevent her from assaulting him.

Ms. Lyle reported that she had been awakened by the Defendant, saw the Victim take the phone and break it, and splash the Defendant with water. That the Victim had slapped the Defendant and the Defendant grabbed her to prevent her from assaulting him.

Officer Mansapit reported that the Victim had scratches on the side of her neck, side of her nose and a burn mark on the Victims [sic] temple.

*Decl. of Prob. Cause* (Dec. 27, 2021). On January 13, 2022, the Grand Jury returned a true bill indicting the Defendant of the crimes. *Indictment* (Jan. 13, 2022).

## B. Arguments set forth in the pleadings.

Defendant seeks to reduce his felony Family Violence charges to a misdemeanor, correctly arguing that, because the Family Violence charge falls under 9 GCA §§ 30.10(a)(1), (b) and 30.20(a), and not under subsection (a)(3), the Court has discretion to decide whether to reduce the charge to a misdemeanor. *See Id.* at 1, 2; 9 GCA § 30.20(b). Defendant further cites 9 GCA § 30.20(c), which prescribes the factors for the Court's consideration, and accompanies those factors with the following considerations:

1. **Extent or Seriousness of victims [sic] injuries:** The named victim did not receive any medical attention as a result of this incident and no discovery was provided regarding any injuries to the named victim.
2. **Defendant's history of violence against the same victim whether charged or uncharged:** There is no evidence of any prior history of violence against the named victim.
3. **The use of a gun or other weapon by the Defendant:** It is alleged by the named victim that Defendant burned her face with a cigarette however the reporting police did not note any burns to her face. It was reported that the named victim assaulted Defendant with a coffee mug.
4. **Defendant's prior criminal history:** Defendant has an arrest for Driving While Impaired and Insufficient Clearance in 2018.
5. **Victim's attitude and conduct regarding the incident:** According the police report, the victim was also arrested for family violence for assaulting Defendant and she broke his cell phone. The named victim informed the People that she wants the charged dropped against Lyle.

6. **The involvement of alcohol and other substances, and the defendant's history of substance abuse as reflected in the defendant's criminal history and other sources:** It is alleged by the victim that Lyle drank three (3) bottles of vodka that day but that seems highly unlikely. It does appear that Lyle was intoxicated that day and has an arrest for Driving While Impaired. There is no other history of alcohol or substance abuse.

7. **Defendant's history of an amenability to counseling:** Lyle has not been assessed by Client Services to determine whether he is in need of counseling, however, if it is recommended that he undergo counseling Lyle is open and willing and amenable to any counseling if needed.

*Id.* at 3.

The People oppose the reduction because Defendant is alleged to have "slapped the Victim, tried cut off Victim's air supply, and **burned the left side of her face with a cigarette**, all while the Defendant was intoxicated and under the influence of an alcohol beverage, signs and symptoms of which were readily observable by GPD officers." *Ppl.'s Opp.* at 3 (emphasis in original). The People further argue that, although the Victim did not receive medical treatment for her injuries, photos of the Victim's injuries, attached to its Opposition as Exhibit "A", dispute the attempts by Defendant to minimize her injuries, including the evidence of "cigarette burns to left side of her temple," as observed by Officer Mansapit. *Id.* at 3, 4.

The People agree that the Defendant does not have any criminal history of violence – however, posit that Defendant's conduct was "extensive and egregious, causing permanent scarring and disfigurement to Victim's face due to the cigarette burn." *Id.* The People also dispute Defendant's claim that the Victim was equally culpable because she was also arrested, as no charges were brought against the Victim regarding the incident. *Id.* Further, the People were unsuccessful in updating the Victim of case updates, and the "stay away/no contact orders" remain in effect. *Id.*

//

## DISCUSSION

9 GCA § 30.20(b) provides that "[u]pon a written, noticed motion prior to commencement of trial, the defendant may move that a felony charge filed pursuant to this § 30.20, other than a felony charge filed pursuant to § 30.20(a)(3), be reduced to a misdemeanor. Whether any charge, other than a felony charge filed pursuant to § 30.20(a)(3), shall proceed as a misdemeanor or a felony rests within the discretion of the court."

9 GCA § 30.20(a) states:

(a) Any person who intentionally, knowingly, or recklessly commits an act of family violence, as defined in § 30.10 of this Chapter, is guilty of a misdemeanor, or of a third degree felony, and shall be sentenced as follows:

(1) for the first offense, the court shall impose a sentence of no less than forty-eight (48) hours imprisonment;

(2) for the second offense, the court shall impose a sentence of no less than thirty (30) days imprisonment; and

(3) for the third offense, the offense shall be classified as a third degree felony and the court shall impose a sentence of no less than one (1) year imprisonment. The person, upon conviction, shall be termed a "repeat offender" and may be subject to extended terms pursuant to § 80.38 of Article 2, Chapter 80 of this Title.

Here, Defendant's Second Charge of Family Violence as a Third Degree Felony was brought under 9 GCA §§ 30.10(a)(1), and 30.20(a), not specifically under subsection (a)(3). Consequently, the Court may exercise its discretion in determining whether to grant the Motion by considering the following factors set forth in Section 30.20(c):

(c) In determining whether a felony charge filed pursuant to this § 30.20, other than a felony charge filed pursuant to § 30.20(a)(3), should be reduced to a misdemeanor, the court shall consider the following factors, among others:

(1) the extent or seriousness of the victim's injuries;
(2) the defendant's history of violence against the same victim whether charged or uncharged;
(3) the use of a gun or other weapon by the defendant;

(4) the defendant's prior criminal history;

(5) the victim's attitude and conduct regarding the incident;

(6) the involvement of alcohol or other substance, and the defendant's history of substance abuse as reflected in the defendant's criminal history and other sources; and

(7) the defendant's history of and amenability to counseling.

9 GCA § 30.20(c). Moreover, in ruling on Defendant's Motion, the Court shall assume all allegations set forth in the Indictment and Magistrate's Complaint and accompanying Declaration as true. The Court will now address each factor in turn.

### 1. The Extent or Seriousness of the Victim's Injuries.

For the first factor, the Court turns to the Declaration of Probable Cause as described in the Magistrate's Complaint. Officer Mansapit observed "scratches on the side of her neck, side of her nose, and a burn mark on the Victims [sic] temple." *Decl. of Prob. Cause* (Dec. 27, 2021). The Defendant allegedly "slapped her on the face," "pushed up against the wall near the door," "pok[ed] her face and chok[ed] her with his left hand . . . for about a minute," and "pushed [the Victim] against a couch, . . . picked up the cigarette, pinned the Victim and burnt her face." *Id.* On its face, the Court finds that the descriptions describing the Defendant's conduct and the Victim's sustained injuries are concerning, most especially the description of the cigarette forced upon the Victim's face.

It is noteworthy that the Defendant is also charged with Aggravated Assault (As a Third Degree Felony), which alleges that the Defendant "recklessly caused or attempt to cause serious bodily injury" to the Victim. *See Indict.* (Jan. 13, 2022). "Serious bodily injury" is defined as "bodily injury which creates: serious permanent disfigurement; a substantial risk of death or serious, permanent disfigurement; severe or intense physical pain; or protracted loss or impairment of consciousness or of the function of any bodily member or organ." 9 GCA § 16.10(c). As such, although the Family Violence felony charge does not allege "serious" bodily injury *per se*, the

Aggravated Assault charge does allege "serious bodily injury." In addition, the Court finds that the description of the Defendant's alleged conduct, particularly the cutting off of the Victim's airway while holding a lit cigarette to her face and actually causing burns as noted by Officer Mansipit, qualify as "serious bodily injury" creating "permanent disfigurement" and "severe or intense physical pain." *Id*. Thus, the extent or seriousness of the Victim's injuries weight **against** granting Defendant's Motion.

### 2. The Defendant's History of Violence against the same Victim whether Charged or Uncharged.

The Defendant has no criminal history of violence against either of the Victims. And there has been no information provided to the Court about any uncharged violence against him. Therefore, the absence of the Defendant's violent history against both Victims weighs **in favor of** granting the Defendant's Motion.

### 3. The Use of a Gun or Other Weapon.

The charges do not allege the use of a gun or other deadly weapon. However, the Defendant is alleged to have held a lit cigarette to the Victim's face. Although not inherently a deadly weapon, Defendant's use of a cigarette upon the Victim may satisfy the definition of a deadly weapon: "any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is known to the defendant to be capable of producing death or *serious bodily injury*." 9 GCA 16.10(d) (emphasis added). Because the use of the cigarette upon the Victim could have caused "**serious permanent disfigurement**; a substantial risk of death or serious, permanent disfigurement; **severe or intense physical pain**," this factor weighs **against** granting Defendant's Motion. 9 GCA 16.10(c).

//

//

## 4. The Defendant's Prior Criminal History

Defendant Lyle has a prior conviction in CM0530-18 for Reckless Driving (As a Misdemeanor). Originally charged with Driving While Impaired (As a Misdemeanor), *see, Magis. Compl., CM0530-18* (Nov. 9, 2018), the Defendant pleaded guilty to Reckless Driving (As a Misdemeanor) on July 3, 2019, and was sentenced to sixty (60) days incarceration, all suspended, with credit for time served. *See DWI Crt. Judg., CM0520-18* (Jul. 11, 2019). The Defendant was also placed under the supervision of DWI Court for two (2) years, with the notable provision that he submit to treatment and assessment by the Probation Services Division ("Probation") and/or Guam Behavioral Health and Wellness Center ("GBHWC"). *Id.* Because Defendant has a prior case, because it is a non-violent misdemeanor offense, this factor weighs *neither* **in favor of nor against** granting Defendant's Motion.

## 5. The Victim's Attitude and Conduct Regarding the Incident.

Both parties proffer inconsistent submissions regarding the Victim's attitude regarding the incident. Defendant Lyle represents that the Victim has communicated to prosecutors that she wants the charges dropped, and the People represent that they had no successful communications with the Victim. In this matter, the Stay-Away Order in this matter is still in effect, and the record does not reflect any motion to modify or lift the Order. Thus, this factor weighs **against** granting Defendant's Motion.

## 6. The Involvement of Alcohol or Other Substance, and the Defendant's History of Substance Abuse as Reflected in the Defendant's Criminal History and Other Sources.

The Victim reported to police that the Defendant "had been drinking" before the alleged altercation occurred. *Dec. of Prob. Cause* (Dec. 27, 2021). Further, officers observed that the Defendant "had a strong smell of an intoxicating beverage emitting from his mouth and had blood

shot watery eyes." *Id.* Defendant Lyle admits that in 2018, he was arrested for Driving While Impaired. *See Deft.'s Mot.* at 3. In CM0520-18, although Defendant did not plead guilty to the offense of Driving While Impaired, the Court considers that the incident involved his alcohol use, and, given his prior bad acts resulting in his conviction in CM0520-18, the Court is concerned about the Defendant's use of alcohol resulting in criminal behavior. Thus, the involvement of alcohol in this instant matter and Defendant's prior matter weighs **against** granting Defendant's Motion.

### 7. The Defendant's History of and Amenability to Counseling.

As Defendant Lyle was ordered to complete treatment as recommended by Probation and/or GBHWC in CM0520-18, and as the matter is now closed, the Court finds that the Defendant does have history of completing treatment. Indeed, Defendant Lyle submits that he is willing and amenable to receiving treatment. *See Deft.'s Mot.* at 3. Thus, the Defendant's history of treatment and amenability to counseling weighs **in favor of** granting Defendant's Motion.

### CONCLUSION

Upon review of the factors as set forth in 9 GCA § 30.20(c), and as discussed in detail herein, the Court finds that the above factors weigh *against* reducing the felony Family Violence charge to a misdemeanor. Additionally, should this matter proceed to trial, the People must satisfy its burden of proving to a jury that the injuries alleged to have been suffered by the Victim rise to the level of "serious bodily injury" under the statute. Should the People fail in carrying its burden, the jury (or the Court on a motion for judgment of acquittal) may so find.

//

//

//

For these reasons, the Defendant's Motion is **DENIED**. An Amended Criminal Trial Scheduling Order shall be forthcoming.

**SO ORDERED** this 14th day of May, 2025.

**HONORABLE MARIA T. CENZON**
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:

AG, S. Teker

Date: 5/14/25 Time: 3:55pm

Antonio Cruz
Deputy Clerk, Superior Court of Guam